IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 30, 2015

**IN RE: AUTUMN L.**

**Appeal from the Juvenile Court for Claiborne County**
**No. 2013JV1150      Robert M. Estep, Judge**

_____

**No. E2014-01240-COA-R3-PT-FILED-MAY 26, 2015**

_____

This appeal arises from a termination of parental rights proceeding. The Tennessee Department of Children's Services ("DCS") filed a petition to terminate the parental rights of Ashley L. ("Mother") and Aaron B. ("Father") to their minor child Autumn L. ("the Child") in the Juvenile Court for Claiborne County ("the Juvenile Court"). After a trial, the Juvenile Court entered an order terminating Mother's and Father's parental rights to the Child on a number of grounds. Mother and Father appeal to this Court. In addition to challenging the termination of their parental rights to the Child, Mother and Father argue that the case should be remanded to the Juvenile Court because the Juvenile Court did not enter an order within 30 days of the hearing as required by statute. We hold, *inter alia*, that remand is not an appropriate remedy for this noncompliance with statute and would serve no purpose. We affirm the judgment of the Juvenile Court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Lindsey C. Cadle, Tazewell, Tennessee, for the appellant, Ashley L.

Thomas J. Tabor, Jr., Tazewell, Tennessee, for the appellant, Aaron B.

Herbert H. Slatery, III, Attorney General and Reporter, and, Jordan Scott, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

# OPINION

## Background

The Child was born in November 2012. Mother spent the majority of her pregnancy in jail. Both Mother and Father have a history of criminal activity and drug abuse. In February 2013, the Child was removed from the parents' home based on alleged drug abuse by the parents. Permanency plans were developed and entered for the parents. Around this time, a great, great aunt of the Child filed a petition for custody. In October 2013, DCS filed a petition to terminate Mother's and Father's parental rights to the Child. In May 2014, this case was tried. Several witnesses testified, including Mother and Father. We will summarize the pertinent testimony.

Mother and Father testified to a string of poor choices on their part. Mother testified to multiple criminal charges such as public intoxication. Mother, who had sought treatment for drug abuse, failed to attend rehabilitation aftercare and thereafter relapsed on drugs. Mother's drug of choice was Opana. Mother stated that she had not focused on the Child before her incarceration because she was "strung out on drugs." Regarding housing, Mother and Father had lived with Mother's grandmother.

For his part, Father testified to an addiction to painkillers. Father had visited the Child only once throughout the case. Although Father testified to various issues which he claimed prevented him from visiting the Child, he was able to travel on occasion to a suboxone clinic in Johnson City. Mother also asserted various reasons for her sparse visits with the Child, but she as well managed to get to a suboxone clinic.

Neither parent had paid any child support. Mother worked at "Lazy Days" when not in jail, and earned enough money for her food, clothes, shoes and other items. Nevertheless, she paid no support. Father earned money with odd jobs when not in jail. As of trial, the Child lived with a pre-adoptive foster family. The Child was receiving treatment for her various health problems, including a lack of mobility in her limbs. The Child had bonded well with the foster family.

The trial concluded on May 16, 2014. The Juvenile Court issued a memorandum opinion on June 16, 2014. However, the Juvenile Court did not enter its final order until July 2, 2014. The Juvenile Court terminated both Mother's and Father's parental rights to the Child on the following grounds, identical for each parent: abandonment by incarcerated parent for failure to visit, failure to support, and wanton disregard; abandonment by failure to provide a suitable home; substantial noncompliance with permanency plans; and, persistent conditions. Under the standard of clear and

convincing evidence, the Juvenile Court found and held in its detailed order as follows, *inter alia*:

The proof established that [the Child] . . . was born to the natural Mother, [Mother] and [Father], Father. The Child was initially removed from the parents on February 11, 2013, due to alleged drug abuse by the parents. [Mother] testified she had visited with the child on three or four occasions since the child had been placed into custody. Furthermore, the mother testified that she had been arrested seven (7) different times since the child was placed into custody. The mother visited the child on April 15, 2013; august 2, 2013; September 13, 2013/ Therefore, the Court finds that pursuant to T.C.A. § 36-1-102(1)(A)(iv), that the mother has been incarcerated during part of the four (4) months immediately preceding the institution of the termination proceeding and has willfully failed to the [sic] visit the child. The Court finds that the three (3) times the mother saw the child were "token visitation" as defined in T.C.A. § 36-1-102(1)(c). The Court finds that the mother has abandoned the child as defined in T.C.A. § 36-1-102.

[Father] testified that he had visited with the child on one (1) occasion since the child was placed into custody. Visitation was on August 2, 2013. Furthermore, [Father], has been arrested on February 15, 2013, on a Violation of Probation and remained in the jail until the end of May, 2013. Additionally, he was arrested July, 2013, for a Public Intoxication and on October 10, 2013, he pled to Resisting Arrest and was flattening his sentence. Therefore, the father had been incarcerated during part of the four (4) months, immediately preceding the institution of the termination proceeding and has willfully failed to visit as defined in T.C.A. § 36-1-102(1)(A)(iv). He has only exercised "token visitation" as defined in T.C.A. § 36-1-102(c). Therefore, the Court finds that the father has abandoned the child as defined in T.C.A. § 36-1-102(1)(A). Based on the foregoing termination of the parental rights, pursuant to T.C.A. § 36-1-113(g)(1), is granted based on abandonment by both parents.

Additionally, neither parent testified that they had provided any financial support for the child since the child was placed into custody. Therefore, the parental rights of bother [sic] parents are terminated pursuant to T.C.A. § 36-1-113(g)(1).

Furthermore, the Court finds that the continuous incarceration by the parents evidences abandonment as defined in T.C.A. § 36-1-102(1)(a)(iv), due to wanton disregard for the welfare of the child.

The parents testified that the home that the child would reside, if returned to the parents would be the home of [Mother's] Grandmother, being [Bernice M.]. Ho[w]ever, the parents have continued to have legal problems that have resulted in their incarceration making it impossible for the Department of Children's Services to use reasonable efforts to assist the parents in home studies and the establishment of a suitable home. They must be out of jail and living in a home for the Department of Children's Service's workers to observe them in that home to make a finding of whether or not it is suitable. Therefore, the actions of the parents have made it impossible to assist. Court finds that the parents have abandoned the child by failure to provide a suitable home, due to their incarceration as defined by T.C.A. § 36-1-102(1)(A)(ii).

The family Permanency Plan (Exhibit 5) was ratified on March 20, 2013. The responsibilities of the parents included the following:

1) The mother and father will be drug free.
2) The parents will have all legal matters resolved.
3) The parents will demonstrate they can effectively parent Autumn.
4) The parents will have residential stability and employment.
5) The parents will be emotionally healthy.
6) Autumn will have all medical needs met.

The action steps to meet the above listed desired outcomes included:

1) Alcohol and drug assessment by both parents and follow all recommendations and submit to random drug screens.
2) Resolve all legal matters.
3) Attend parenting classes.
4) Demonstrate positive parenting techniques during visitation.
5) Provide necessary items for Autumn during visitation, such as diapers, wipes, and formula.
6) Provide the Department with rent and utility receipts of a safe and stable home.
7) Parents have a mental health assessment and follow recommendations.
8) Parents participate in grief counseling for the loss of a prior child and follow recommendations.

9) Autumn have an EPSD&T and medical, physical/occupation therapy and Tennessee Early Intervention Services appointments.
10) The parents will attend as many of Autumn's appointments as possible.

At trial, both parents testified that they [were] not working, have not completed parenting classes, and both parents are currently serving sentences. They are flattening their time for the charges that they have been found guilty. Therefore, the Court finds that the parental rights should be terminated as stated in T.C.A. § 36-1-113(g)(2), due to substantial non-compliance by the parents with the permanency plan as defined in T.C.A. 37-2-403.

The Court further finds that the parents' rights to the child should be terminated pursuant to T.C.A. § 36-1-113(g)(3), due to persistent conditions based upon drug use, incarceration, and lack of employment.

\*\*\*

The Court finds that the facts and circumstances in this case warrant a finding of best interest. The Court begins its analysis of the best interest of the [Child] by finding that the parents have not made such an adjustment of circumstance, conduct or conditions as to make it safe and in the child's best interest to be in the home of Respondent [Mother] or Respondent [Father]. The Court further finds that Respondent [Father] and Respondent [Mother] have failed to effect a lasting adjustment despite the reasonable efforts provided by the Department. Therefore, it does not appear possible that such a lasting adjustment will occur. Neither parent has maintained regular visitation or contact with the child. The Court further finds that a change of caretakers and/or physical environment would likely have a detrimental effect on the child's emotional, psychological and medical conditions. The Court finds that the physical environment of the parents' home is not healthy and safe for the child such that the parents cannot consistently care for the child in a safe and stable manner due to their continuous criminal activity. Neither parent has paid any child support for the child. The Court finds that the continuation of a parent-child relationship greatly diminishes the [Child's] chances of early integration into a safe, stable and permanent home. The Court finds that it is in the best interest of the child to be adopted, as the child is in a pre-adoptive home.

(Format modified). Mother and Father appeal the termination of their parental rights.

## Discussion

Although not stated exactly as such, Father raises the following issues on appeal: 1) whether the Juvenile Court failed to comply with Tenn. Code Ann. § 36-1-113(k) by not entering an order as required within 30 days of the conclusion of the hearing; and, 2) whether the Juvenile Court erred in finding by clear and convincing evidence that termination of Father's parental rights is in the Child's best interest. Although not stated exactly as such, Mother raises the following additional issues on appeal: 1) whether the Juvenile Court erred in finding by clear and convincing evidence that grounds for termination of Mother's parental rights were established; and, 2) whether the Juvenile Court erred in finding by clear and convincing evidence that termination of Mother's parental rights is in the Child's best interest.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing

*Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We quote from the termination statute the grounds for termination of parental rights relevant to this appeal:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to the provisions of title 37, chapter 2, part 4;

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the a parent or parents or a guardian or guardians, still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the a parent or parents or a guardian or guardians in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

Tenn. Code Ann. § 36-1-113(g) (2014).

Abandonment means, in relevant part, the following:

(ii) The child has been removed from the home of the a parent or parents or a guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the a parent or parents or a guardian or guardians to establish a suitable home for the child, but that the a parent or parents or a guardian or guardians have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department;

***

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or

Tenn. Code Ann. § 36-1-102(1)(A) (2014).

We first address whether the Juvenile Court failed to comply with Tenn. Code Ann. § 36-1-113(k) by not entering an order as required within 30 days of the conclusion of the hearing. The termination hearing concluded on May 16, 2014. The Juvenile Court did not enter its final order until July 2, 2014. Therefore, according to Father and Mother, this case should be remanded to the Juvenile Court. Tenn. Code Ann. § 36-1-113(k) (2014) does indeed require in a parental termination case that the court "shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." The pertinent question is what is to be done when that directive is not adhered to by a trial court.

We addressed this scenario in *In re: M.R.W.*, No. M2005-02329-COA-R3-PT, 2006 WL 1184010 (Tenn. Ct. App. May 3, 2006), *no appl. perm. appeal filed*. There, we stated:

[T]he trial court's failure to comply with the portion of the section that directs it to enter an order within thirty days of the hearing does not divest the trial court of its jurisdiction. Moreover, in the case now before us, where the trial court has made definite and detailed findings of fact and conclusions of law, remand on appeal as requested by Mother would serve no purpose.

*In re: M.R.W.*, at *4.

Thus, even though the Juvenile Court apparently did not adhere to the statute, the requested remand is not appropriate. The Juvenile Court already has made sufficient findings of fact and conclusions of law. To remand would be pointless. *See, e.g., In re: Isobel V.O.*, No. M2012-00150-COA-R3-PT, 2012 WL 5471423, at *4 (Tenn. Ct. App. Nov. 8, 2012), *no appl. perm. appeal filed*; *In re: Ella M.I.*, No. M2013-01543-

-9-

COA-R3-PT, 2014 WL 1778275, at *4 (Tenn. Ct. App. Apr. 30, 2014), *no appl. perm. appeal filed*. We, therefore, hold that, while the Juvenile Court did not comply with statute in the timeliness of entering its order, there is no specified remedy such as remand required. We do, however, admonish trial courts and parties to adhere to the statutes enacted by our General Assembly.

We next address whether the Juvenile Court erred in finding by clear and convincing evidence that grounds for the termination of Father's parental rights were established. Father does not raise this issue on appeal. Given Father's election not to brief this issue on appeal, we will not respond to arguments never made. However, we have reviewed the record carefully and conclude that clear and convincing evidence supports the Juvenile Court's findings regarding grounds for termination of Father's parental rights to the Child.

We next address whether the Juvenile Court erred in finding by clear and convincing evidence that termination of Father's parental rights is in the Child's best interest. The Juvenile Court made detailed findings as to this issue. Additionally, our own review of the record supports the Juvenile Court's findings and ultimate decision. Father has a history of drug abuse and has shown practically no ability to parent the Child. The record reveals no reasonable prospect that Father would be able to effectively parent the Child any time soon, if ever. The Child is being cared for by a foster family and preserving Father's parental rights would prove detrimental to the Child. Considering the relevant statutory factors, we hold that clear and convincing evidence supports the Juvenile Court's finding that it is in the best interest of the Child for Father's parental rights to be terminated.

We next turn to Mother's separate issues and address whether the Juvenile Court erred in finding by clear and convincing evidence that grounds for termination of Mother's parental rights were established. Mother challenges some, but not all, of the grounds for termination of her parental rights as found by the Juvenile Court. Only one ground must be proven for termination of parental rights. Therefore, conceding one ground and challenging another is akin to conceding grounds altogether. A parent's failure on appeal to challenge one ground for termination when multiple grounds were found by the trial court relieves us of the need to review grounds. *In re: Alexis L.*, No. M2013-01814-COA-R3-PT, 2014 WL 1778261, at *2 (Tenn. Ct. App. Apr. 30, 2014), *no appl. perm. appeal filed*. Nevertheless, we have reviewed the record carefully and conclude that clear and convincing evidence supports the Juvenile Court's findings regarding grounds for termination of Mother's parental rights to the Child.

The final issue we address is whether the Juvenile Court erred in finding by clear and convincing evidence that termination of Mother's parental rights is in the

-10-

Child's best interest. The Juvenile Court made its findings relative to this issue which we quoted from above. Among other things, Mother's repeated drug abuse and ongoing pattern of incurring criminal charges unfortunately demonstrate her inability to parent the Child. There is no support in the record that Mother has undergone any sort of transformation such that she can parent the Child in the near future. Considering the relevant statutory factors, we hold that clear and convincing evidence supports the Juvenile Court's finding that it is in the best interest of the Child for Mother's parental rights to be terminated.

In summary, we find and hold that the evidence is clear and convincing that (1) grounds exist to terminate the parental rights of Mother and Father to the Child, and (2) the evidence is clear and convincing that it is in the Child's best interest for Mother's and Father's parental rights to be terminated. We affirm the judgment of the Juvenile Court in its entirety.

### Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed one-half equally against each of the Appellants, Ashley L. and Aaron B., and their surety, if any.

_____
D. MICHAEL SWINEY, JUDGE

-11-